IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAVE MART SUPERMARKETS,<br><br>          Plaintiff,<br><br>     vs.<br><br>ALBERTSON'S, LLC,<br><br>          Defendant.<br>_____/ | CASE NO. CV F 07-1572 LJO SMS<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br>(Docs. 15, 17.) |

**INTRODUCTION**

Defendant Albertson's, Inc. ("Albertsons") seeks to dismiss plaintiff Save Mart Supermarkets' ("Save Mart's") declaratory relief claim that Save Mart is not obligated to accept liability for underlying litigation which, according to Save Mart, should not have been transferred to it by an agreement to purchase and accept certain Albertsons' assets and liabilities. This Court considered Albertsons' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 27, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES Albertsons' F.R.Civ.P. 12(b)(6) motion to dismiss Save Mart's declaratory relief action.

**BACKGROUND**

**The Parties**

Save Mart and Albertson's have been engaged in owning and operating retail grocery stores and distribution centers in California and Nevada. Save Mart and Albertsons are parties to a securities

purchase agreement which is the subject of this action and will be discussed below.

**Underlying Litigation**

In 1998, Albertsons sold its Deans Dairy in San Leandro to Dean Foods Company ("Dean Foods") and agreed to indemnify Dean Foods for dairy employee claims. Dairy employees brought a discrimination action ("dairy action") against Dean Foods. Federal Insurance Company ("Federal Insurance"), Dean Foods' insurer, supplied a defense and contributed to settle the dairy action. Dean Foods and Federal Insurance took the position that Albertsons was responsible under the dairy purchase agreement with Dean Foods to indemnify liabilities arising out of the dairy action.

On June 28, 2006, Federal Insurance commenced in the U.S. District Court for the Northern District of California an action entitled *Federal Insurance Company v. Albertson's, Inc., et al.*, Case No. CV 06-04000 MHP ("Federal Insurance action"), to seek to recover monies expended on the dairy action. In May 2007, the Northern District granted partial summary judgment against Albertsons and issued Albertsons a November 28, 2007 indemnification order.

**Purchase Agreement**

Save Mart and Albertsons entered into a November 20, 2006 Securities Purchase Agreement ("agreement") by which Save Mart acquired for $575 million Albertsons' Northern California operations, comprising retail grocery stores and distribution centers under the "Albertson's" and "Lucky" banners in northern California and Nevada. Under the transaction, Albertsons transferred its northern California operations to its subsidiary Lucky Stores, Inc. ("LSI"), the stock of which was sold to Save Mart.

The agreement's fifth recital states that "Purchaser will acquire all of the assets and liabilities (both historical and future) of the Northern CA Operations other than as expressly excluded pursuant to this Agreement . . ." Save Mart agreed to accept liability associated with existing litigation against Albertsons relating to Albertsons' northern California operations. The agreement's section[1] 5.2(b) provides: "Prior to the Closing Date, Seller (x) will cause . . . all other assets and liabilities relating to the Northern CA Operations other than those assets and liabilities required to be retained or assumed

---

[1] Unless otherwise noted, all further references to "section" will be to specific sections of the agreement.

2

by Seller or its Affiliates pursuant to Section 5.2(a), to be transferred to or assumed by LSI . . ."

The agreement's Schedule 3.11 listed litigation, including the Federal Insurance action, contemplated as a liability to be accepted by Save Mart.

Under the agreement's section 8.3(v), Save Mart agreed to indemnify Alberstons as to:

> All liabilities for claims related to occurrences prior to or on the Closing Date by or relating to any Purchaser Employee or any former employee of the Northern CA Operations . . ., including workers' compensation, employment practices, and similar claims as well as third party general liability claims, automobile liability claims, employment practices claims and similar claims relating to Northern CA Operations.

Save Mart claims that on October 22, 2007, it learned that Albertsons had mistakenly transferred the Federal Insurance to Save Mart in that the Federal Insurance action did not arise out of Albertson's northern California operations. Save Mart further claims that it "unwittingly paid for the defense of the action." Albertsons denies responsibility for the Federal Insurance action and questions Save Mart's nearly one year delay to address propriety of transfer of the Federal Insurance action.

### Save Mart's Declaratory Relief Claims

On October 26, 2007, Save Mart filed this action to seek this Court's declaration that the Federal Insurance action "does not relate to Albertson's Northern CA Operations as that term is used in the Agreement" and that in turn Save Mart is not obligated to accept liability for the Federal Insurance action.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Albertsons seeks dismissal of Save Mart's declaratory relief claims on grounds that the agreement expressly transferred the Federal Insurance action to Save Mart. A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."

*Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, the court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). "However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). A court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

In a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2 A court may also consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). As such, this Court may consider the agreement.

### Agreement's Plain Terms

Albertsons argues that the agreement's plain terms transferred the Federal Insurance action to Save Mart and govern. Albertsons notes that its northern California operations "were, to the extent not already a part of LSI, carved out of Albertson's and transferred to LSI. Save Mart then purchased all the stock of LSI from Albertson's. Through this transaction, Save Mart acquired all historic liabilities associated with such operations" in that "the underlying deal was a stock purchase." Albertsons construes the agreement's fifth recital and section 5.2(b) to the effect that Save Mart acquired all **historical** liabilities of its northern California operations, other than those retained by Albertsons, and including the Federal Insurance action identified on the agreement's Schedule 3.11.

Save Mart responds that the Federal Insurance action is wholly unrelated to "Albertson's operation of grocery stores and distribution centers in Northern California." Save Mart argues that

"nothing in the Agreement . . . requires Save Mart to defend Albertson's in a lawsuit that is unrelated to the grocery stores and distribution centers that Save Mart purchased from Albertson's." Save Mart concludes that the Federal Insurance action is "outside the definition of Northern CA Operations because it is a liability of Albertson's former dairy operations, not a liability of its ownership and operation of stores and distribution centers." Save Mart notes that it neither purchased nor operated Deans Dairy.

Under California law,[2] the fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538 (1992) (citing Cal. Civ.Code, § 1636)). Under statutory rules of contract interpretation, the parties' mutual intention at the time the contract is formed governs interpretation. *Efund Capital Partners v. Pless*, 150 Cal.App.4th 1311, 1322, 59 Cal.Rptr.3d 340, 347 (2007). Contracts are to be interpreted as a unified whole, with effect given to each provision to the "greatest extent possible." *United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1265 (9th Cir. 2003). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal.4th at 1264, 10 Cal.Rptr.2d 538 (citing Cal. Civ.Code, § 1638)).

To support its plain terms argument, Albertsons points to specific agreement provisions. As a reminder, the agreement's fifth recital states in part: "Purchaser will acquire all of the assets and liabilities (both **historical** and future) of the Northern CA operations other than as expressly excluded pursuant to this Agreement . . ." (Bold added.) Under section 5.2(b), Albertsons transferred certain stores and their associated real and personal property and employees plus "**all other** assets and **liabilities relating to the Northern CA Operations** other than those assets and liabilities required to be retained or assumed by the Seller or its Affiliates pursuant to Section 5.2(a)." (Bold added.) According to Albertsons, the agreement provides that if a liability relates to the northern California operations, Save Mart acquired it unless it was identified in section 5.2(a) as an asset to be retained or assumed by Albertsons. Albertsons argues that since the Federal Insurance action was not an excluded liability under section 5.2(a), it was transferred to Save Mart.

Section 3.11 provides in pertinent part: "Except as set forth on Schedule 3.11, there is no legal,

---

[2] The governing law section 11.2 provides that California law will govern the agreement's interpretation and construction.

5

administrative, arbitration or other similar suit, proceeding, claim, action or governmental or regulatory investigation of any nature . . . at law or in equity against LSI or any Retained Subsidiary or affecting the Northern CA Operations pending . . ." Schedule 3.11 identifies the Federal Insurance action. Albertsons concludes the plain language of the fifth recital, section 5.2(b), section 3.11 and schedule 3.11 transferred the Federal Insurance action to Save Mart.

Save Mart responds that the parties agreed that Save Mart did not acquire Albertsons' remaining obligations arising from its ownership of Deans Dairy. Save Mart points to the agreement's section 3.9(d), which addresses the dairy services agreement between Albertsons and Dean Foods and which provides in pertinent part:

> The Dairy Services Agreement dated March 1, 1998 (as subsequently amended) ("Dairy Agreement") between Dean Foods Company . . . and Albertson's LLC, or its affiliates, including LSI shall be amended as of the Closing Date in accordance with the term sheet attached hereto as Schedule 3.9(d) and, except as provided in such modified agreement, neither Purchaser nor LSI and the Retained Subsidiaries shall have any further obligation or liability under such Dairy Agreement.

Save Mart argues that the agreement's section 8.3(v) indemnity provision evidences that the parties agreed to limit Save Mart's acquisition of liabilities to stores and distribution centers in that it "describes the claims accepted by Save Mart as those claims brought by employees and former employees '*of the Northern CA Operations*.'" Save Mart faults Albertsons position that Save Mart "accepted liabilities for anything and everything ever having to do with Albertson's in Northern California."

Albertsons counters that the agreement's section 3.9 establishes that Deans Dairy and historic operations associated with it relate to its northern California operations, including the Federal Insurance action. Albertsons notes that after Save Mart purchased LSI, Save Mart excised its option to terminate the Dairy Services Agreement, a dairy supply contract between Dean Foods and LSI. Albertsons adds that Save Mart desired to discontinue the Dairy Services Agreement and provided for Albertsons to amend it to permit Save Mart to terminate it. As to the section 8.3(v) indemnity provision, Albertsons contends it "does not speak to the scope of current and historic liabilities assumed by Save Mart."

Albertsons takes an "all or nothing approach." Distilled to its essence, Albertsons position is that since the Federal Insurance action was included on a schedule of litigation for which Save Mart accepted, Save Mart is responsible for the Federal Insurance action. Save Mart more correctly points

6

to interpretation of assets and liabilities of "the Northern CA Operations." A key point is that through its stock purchase, Save Mart acquired limited stores and distribution centers. Save Mart acquired no interest in Dean Farms and championed termination of the Dairy Services Agreement. In fact, Albertsons and Save Mart agreed that Save Mart has no obligation under the dairy services agreement between Albertsons and Dean Foods. At this early pleading stage, this Court is not in a position to conclude that the agreement's plain terms support Albertsons position that Save Mart accepted responsibility for the Federal Insurance action.

### "Arising Out Of" Vs. "Relating To"

Albertsons argues that Save Mart's complaint inaccurately describes the Federal Insurance action as not "arising out" of the northern California operations. Albertsons points to the agreement's provision that Save Mart acquired assets and liabilities "relating to" the northern California operations. Albertsons notes the broad meaning of "relating to": "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031 (1992). Albertsons cites *Aloha v. Islandair, Inc. v. Tseu*, 128 F.3d 1301, 1302 (9th Cir. 1997), where the Ninth Circuit Court of Appeals evaluated "relating to" in the context of a section of the Airline Deregulation Act and observed: "The phrase 'relating to' should be construed broadly to mean 'has a connection with or reference to.'" Albertsons also cites to *MHC Financing Ltd. Partnership Two v. City of Santee*, 125 Cal.App.4th 1372, 23 Cal.Rptr.3d 622, 643 (2005), where in addressing a California Civil Code section, the California Court of Appeal construed "arising out" more narrowly than "relating to."

Albertsons notes that the agreement's first recital defined "Northern CA Operations" as Albertsons and LSI's "retail grocery stores and distribution centers under the 'Albertson's' and 'Lucky' banners in Northern California and Nevada (the ownership and operation of such stores and distribution centers in northern California and Nevada . . .)" Albertsons argues that the Federal Insurance action relates to the northern California operations as defined in the agreement "because it is a liability in connection with the 'ownership and operation of . . . stores and distribution centers in Northern California.'" Albertsons notes that the Federal Insurance action was identified in the schedule of litigation affecting the northern California operations and thus properly transferred to Save Mart.

7

Save Mart responds that as interpreted by Albertsons, the phrase "relating to" is "virtually without limit in that it would include anything that ever had anything to do with the stores and distribution centers it used to operate in Northern California." Save Mart points to Justice Scailia's concurring comment addressing application of the Employee Retirement Income Security Act ("ERISA"): "But applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *Cal. Div. Of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335, 117 S.Ct. 832, 843 (1997 concur. opin.)  In anther decision addressing the scope of ERISA preemption, the United States Supreme Court observed:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for "[r]eally, universally, relations stop nowhere," H. James, Roderick Hudson xli (New York ed., World's Classics 1980). But that, of course, would be to read Congress's words of limitation as mere sham . . .

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S.Ct. 1671, 1677 (1995); *see District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1 (1992) ("[p]re-emption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.")

Save Mart directs this Court to the "context" where "relating to" appears in the agreement, that is, section 5.2(b): "all other assets and liabilities relating to the Northern CA Operations . . ."  The agreement defines "Northern CA Operations" as "retail grocery stores and distribution centers under the 'Albertson's' and 'Lucky' banners in northern California and Nevada (the ownership and operation of such stores and distribution centers in northern California and Nevada . . . )" Save Mart correctly argues that "relating to" must be interpreted to require "a logical and causal connection to the *operation* and *ownership* of grocery stores and distribution centers as contemplated by the Parties."  Albertsons attempts to stretch "relating to" to a dairy operation which Albertsons sold 10 years ago.  At this pleading stage, this Court is unable to conclude that Deans Dairy relates to liabilities of Albertsons

/ / /

/ / /

northern California operations as Albertsons advocates.[3]

## Mistake

Albertsons faults Save Mart's failure to allege sufficient facts that Save Mart "mistakenly" assumed liability for the Federal Insurance action. Albertsons contends that Save Mart's claim that it did not understand that the Federal Insurance action was to be transferred to it is a unilateral misinterpretation. Albertsons argues that Save Mart's subjective misinterpretation of the agreement warrants dismissal of its declaratory relief claims.

"When the parties are dealing in an arm's length transaction with an opportunity to accept, reject or modify the terms of the agreement, different rules apply. The parties are bound by the terms of the contract even if they do not read it." *Markborough California, Inc. v. Superior Court*, 227 Cal.App.3d 705, 277 Cal.Rptr. 919, 927 (1991). "A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it." *Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996).

"[I]n the interest of preserving some reasonable stability in commercial transactions, the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of, or to have misunderstood, the provisions of the contract." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal.App.4th 1410, 1421, 49 Cal.Rptr.2d 191 (1996). In *Hedging Concepts*, 41 Cal.App.4th at 1421-1422, 49 Cal.Rptr.2d at 198, the California Court of Appeal further explained:

> There are two reasons courts will not set aside contracts for mere subjective misinterpretation. First, to declare rescission based upon mistaken undisclosed subjective interpretation would conflict with the objective theory of enforceable contracts. If this were the law, the objective theory of contracts would give with one hand, while the subjective misunderstanding theory of rescission would take away with the other. This is not the law. Second, a unilateral misinterpretation of contractual terms, without knowledge by the other party at the time of contract, does not constitute a mistake under either Civil Code section 1577 or 1578. *See, generally*, 1 Witkin, Summary of California Law (9th ed. 1987) Contracts, section 379, pages 345-346.

Save Mart accuses Albertsons of overstretching Save Mart's claims. Save Mart notes that it

---

[3] Save Mart argues that if the agreement is ambiguous, it is entitled to proffer evidence to validate its interpretation of the agreement. At this pleading stage, this Court need not determine whether the agreement is ambiguous. This Court need only determine whether Save Mart's complaint alleges a cognizable claim. The complaint does, especially given the parties' controverted interpretations and applications of the agreement.

9

seeks neither to disavow the agreement because the Federal Insurance action was transferred nor to rescind the agreement based on mistake. Save Mart notes it "seeks to enforce the terms of the Agreement so that it need not accept liability for something clearly outside the Northern CA Operations." Save Mart adds that the parties contemplated mistakes and to reconcile them and points to the agreement's section 5.2(d):

> In the event that, subsequent to the Closing Date, Seller or Purchaser shall either . . . determine that certain assets or liabilities relating solely to the Northern CA Operations were transferred . . . and should not have been so transferred, then (assuming the accuracy of such determination) as promptly as practicable thereafter, Purchaser or Seller, as appropriate, shall take all steps reasonably necessary to transfer and deliver any and all of such assets . . .

At this pleading stage, this Court need not determine whether Save Mart is bound to the consequences of a mistake from not adequately reviewing the agreement. The present situation does not arise to a rescission or setting aside the agreement. The pertinent issue is limited to interpretation of the agreement.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES Albertsons' F.R.Civ.P. 12(b)(6) motion to dismiss Save Mart's declaratory relief action.

IT IS SO ORDERED.

Dated:   **February 21, 2008**                    /s/ Lawrence J. O'Neill
                                                UNITED STATES DISTRICT JUDGE